LAURENCE STUART WARSHAW, ESQ.

ATTORNEY FOR PLAINTIFF

1601 THIRD AVENUE, 26D

NEW YORK, N.Y. 10128

(212)365-4895

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

ADAMS BOOK COMPANY, INC.

        Plaintiff,

                              CV.14-4069
                              Pamela K. Chen, J.
                              Roanne L Mann, M.J.

        against

HOUGHTON MIFFLIN HARCOURT PUBLISHING
COMPANY.

        Defendant.
_____

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
MOTION TO DISMISS COMPLAINT

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT...........................................................................................1

A. THE STANDARD FOR DISMISSAL UNDER FRCP 12(b)(6). ................................5

B. THE CONTRACT CLAIMS ......................................................................................5

C. TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS....................7

D COMMON LAW UNFAIR BUSINESS PRACTICE AND UNFAIR COMPETITION
. ..................................................................................................................................8

E. PRIMA FACIE TORT ...............................................................................................8

F. THE DONNELY ACT AND NEW YORK'S POLICY FOR FAIR COMPETITION
......................................................................................................................................9

G. THE TYING OF EBOOKS........................................................................................11

H. INJUNCTIVE RELIEF..............................................................................................12

I. CONCLUSION...........................................................................................................12

## TABLE OF AUTHORITIES

Ashcroft v Iqbal, 556 U.S. 662, 129 S.Ct. 1937 (2009)...........................................5

Bazak Int'l Corp. V Mast Industries, 73 N.Y.2d 113, (1989)...........................6

Bell Atl. Corp. v. Twombly, 550 U.S.544, 570, 127 S. Ct. 1955, (2007).....................................5

Benjamin of Forest Hills Realty, Inc. V Austin Sheppard Realty, Inc. , 34 A.D.3d 91 (2d Dept. 2006) ..10

Capitaland United Soccer Club, Inc. V Capital District Sports & Entertainment, 238 A.D.2d 777, (3rd Dept.
1997)..............................................................................................................................11

Carvel Corp. v Noonan, 3 NY3d 182, 190, 818 N.E.2d 1100, 785 N.Y.S.2d 359 [2004]..............................6

Dalton v Educational Testing Service, 87 N.Y.2d 384 (1995).............................................................5,6

Electrolux Corp. V Val-Worth, Inc., 6 N.Y.2d 556 (1959).................................................................10

Freihofer v. Hearst Corp., *65 N.Y.2d 135, 490 N.Y.S.2d 735,(1985)*........ .............................................8

Gregoris Motors v Nissan Motor Corp., 630 F.Supp 902 ( EDNY 1986)............................................3

Gross v Empire Healthchoice Assurance, Inc., 16 Misc 3d 112(A), 847 NYS2d 896 (SCNY 2007)........5

Harris v Mills, 572 F.3 22 ( 2nd. Cir. 2009)...........................................................................................................5

Matter of Aimcee Wholesale Corporation and Tomar Products, Inc.  21 N.Y.2d 621 (1968). .................10

New York v Mobil Oil Corp., 38 N.Y.2d 460 (1975)...........................................................................................10

Pyramid Company of Rockland v Mauther, 153 Misc.2d 458, ( SCNY Rockland Co. 1992) .................12

Spread Enterprises, Inc. V. First Data Merchant Services, 11-CV-4743 Lexis 119080 ( EDNY 2012).....5

Springer v Viking Press, 90 A.D.2d 315 (1st Dept 1982)........................................................................................9

Tarascio v DeCapite, 2009 N.Y. Misc. Lexis 3960 (Nassau Co. 2009)...............................................................8

.
Tom Doherty Associates, Inc. V Saban Entertainment, Inc., 60 F.3d 27 (2nd Cir. 1995)...............................12

Donnelly Act (GBL 340 et seq.)...........................................................................................................................10

UCC-1-201 (2) ...........................................................................................................................................................6

ADAMS BOOK COMPANY, INC. (Adams) submits this memorandum of law in opposition to the Defendant's (HMH) pre answer motion under FRCP 12(b)(6) seeking dismissal of the complaint in this action .

## PRELIMINARY STATEMENT

The complaint in this action alleges both an injury to competition in the national K-12 book sales market as well as to Adams, a leading competitor in the industry. Adams is a major national supplier of K-12 school books as a single source from both large and small publishers to private, parochial and public schools and school districts throughout America. It deals with every publisher, large and small of K-12 scholastic books. Adams acts as an adjunct of its school  customers interfacing with industry publishers to service accounts.

The complaint alleges that defendant Houghton Mifflin Harcourt Publishing Company (HMH), the largest publisher of K-12 scholastic texts in America  has  engaged in a course of  unfair trade and competition designed to restrain trade in the national K-12 scholastic school book industry and also eliminate Adams as a competitor in the industry by changing the classification of  Adams from an "institutional account " to that of a "reseller" together with accompanying commercially unreasonable  changes in the decades long course of conduct and dealing between these companies. The complaint also

1

alleges that HMH was in direct competition with Adams and is a monopoly or infers it is becoming one. It is further alleged that virtually every Adams order includes some portion of HMH print text books.

The action was filed in state court on June 26, 2014 alleging both an injury to competition in the national K-12 book sales market as well as to Adams, a leading competitor in the industry. An Order To Show Cause for injunctive relief seeking to reverse the re classification of the new HMH policies was concurrently filed. The matter was removed to this court on June 30, 2014. A hearing to determine whether injunctive relief would be issued to reverse the new policies was held on July 22, 2014. The court denied the application holding that an irreparable injury was not shown.

The complaint alleges that the anti competitive scheme began in late 2012 when HMH reclassified ADAMS as a "reseller" rather than an "institutional account". Adams had maintained "institutional " status with HMH and its predecessors in interest since its founding in 1945. The reclassification to re seller has a material negative competitive impact on Adams. The complaint alleges that the product discounts, shipping terms and book return policies traditionally available to Adams as an institutional account were thus summarily denied or significantly reduced or eliminated virtually rendering Adams uncompetitive as a seller of HMH text product effecting portions of virtually very sale . Additionally, HMH further announced that it was splitting its market so that only sales of

2

public schools books would be sold and shipped through HMH. However, under this plan, Adams would now be required to purchase HMH print books for its private and parochial school customers through one of its competitors, MBS Limited, LLC ( MBS)! In March, 2014, MBS and HMH issued a press release announcing their formalized partnership (par 20a). Because both MBS and HMH are sellers of HMH books to schools, the complaint alleges that this relationship constitutes a horizontal restraint of trade, a per se violation of the Donnelly Act ( par .34) . Gregoris Motors v Nissan Motor Corp., 630 F.Supp 902 ( EDNY 1986). However, the movant cites this as a vertical restraint, subject to a rule of reason analysis which requires showing injury to competition. The movant's conclusory spin is that by these changes, HMH created competition by allowing distributors to sell books in competition with it. However the record suggests that HMH was always able to compete with its distributors as it did with Adams as is pleaded in the second cause of action for tortious interference with existing contractual relations.

In early 2014, onerous form contracts with HMH and MBS were sent to Adams to be signed memorializing and confirming the new classification and resulting changes along with an ultimatum to sign them or lose access to HMH products. Adams refused to sign the contracts recognizing them as poison pills. Commencing February 2014, HMH then sought to deny Adams the ability to purchase its books. However, due to an apparent glitch on HMH's web site, Adams was able to continue to obtain HMH text products as

3

an institutional account. It was not until June 2014, that the web site was modified and Adams was shut out and unable to get HMH print product. On June 20, 2014, HMH also advised Adams that because it would not sign the contracts, Ebooks , provided pursuant to a separate contract between the parities would also be withheld from Adams (par 18,20). This action quickly followed.

The complaint is comprised of over 78 paragraphs and alleges six causes of action:

I. Breach of Contract and the Covenant of Good Faith and Fair Dealing

ii. Tortious Interference with Contractual Relations

iii. Common Law Unfair Business Practice and Unfair Competition

iv. Violation of GBL 340 (Donnelly Act)

v. Injunctive Relief

vi. Prima Facie Tort

The movants predictable and repeated refrain is that Adams made its own bed simply wants to tell HMH how to run its business. However, what is pleaded is that Adams was compelled to resist economic coercion that threatens its very existence.

For the reasons stated below, the motion should be denied. However, should the court determine that the complaint is deficient as to any cause of action, then leave to amend is requested.

4

## A. THE STANDARD FOR DISMISSAL UNDER FRCP 12(b)(6).

It is settled law that under FRCP 12(b)(6) a complaint should be dismissed only if

it does not contain enough allegations of fact "to state a claim to relief that is plausible on its

face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

In considering the motion, the court is to accept as true the allegations of fact in the

complaint and in a context specific task draw all reasonable inferences in favor of the

plaintiff. The issue is not whether a plaintiff will probably and ultimately prevail but

whether the claimant is entitled to offer evidence to support the claims. Ashcroft v

Iqbal, 556 U.S. 662, 129 S.Ct. 1937 (2009);  Harris v Mills, 572 F3d 66 (2nd Cir, 2009)

;Spread Enterprises, Inc. V. First Data Merchant Services, 11-CV-4743 Lexis 119080 (

EDNY 2012). The causes of action state claims that are plausible on their face.

### B. THE CONTRACT CLAIMS

The first cause of action  is based upon a breach of contract which

includes breach of the covenant of good faith and fair dealing in all contracts..

Dalton v Educational Testing Service, 87 N.Y.2d 384 (1995); Spread Enterprises,

Inc. V. First Data Merchant Services, supra. A breach of the covenant can even be

pleaded even if there is no underlying breach of contract. Gross v Empire

Healthchoice Assurance, Inc., 16 Misc 3d 112(A), 847 NYS2d 896 (SCNY

2007). Here, the contract alleged to have  been breached is the one

demonstrated by conduct and course of dealing between the parties over the

5

last 70 years. It is fundamental that conduct and course of dealing can establish a contract. Further supporting the contract claim are the allegations that the covenant of good faith an fair dealing has also been breached. The covenant of good faith and fair dealing is applicable to all contacts in New York. Dalton v Educational Testing Service, 87 N.Y.2d 384 (1995). The movant does not submit any authority that limits the covenant only to written contracts.

The contact as alleged is not limited by the Statute of Frauds. The book orders are executed within a year, the conduct is unequivocally referable to the conduct and discovery will reveal that each sale generates a sales order/invoice.

UCC-1-201 (2) further establishes a "merchant's exception " to the writing requirement where " if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten days after it is received." Bazak Int'l Corp. V Mast Industries, 73 N.Y.2d 113, (1989) (rejecting a requirement for express references or explicitly to terms.) Sales orders were issued between Adams and HMH. If necessary to plead this, it can be added by

6

amendment.

The terms and conditions of the agreement between the parties are pleaded as is the breach and bad faith of HMH. More particularly, it is pleaded that Adams does not function as its competitors because it acts as an adjunct of the schools it represents. The reclassification to "reseller" is unfair, commercially unreasonable and capricious. The requirement to purchase through its competitor MBS, is unprecedented and unfair. These changes are designed to impede Adams with the goal of making it disappear. The elements of a breach of contract are pleaded.

## C. TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

HMH competes directly with Adams. A cause of action for tortious interference with prospective business relations requires satisfaction of the following elements: (1) business relations with a third party; (2) the defendant's interference with those business relations; (3) the defendant acting with the sole purpose of harming the plaintiff or using wrongful means; and (4) injury to the business relationship (*see* Carvel Corp. v Noonan, 3 NY3d 182, 190, 818 N.E.2d 1100, 785 N.Y.S.2d 359 [2004]. The complaint alleges the requisite elements for the claim in paragraphs 26-26.2, and 38-42  and cites a specific customer school where the  payment of $40,000 in concessions was provided to the school  in order to prevent Adams getting a $12,000 order.

7

This is also an example of predatory pricing form which malice can be
inferred.

## D  COMMON LAW UNFAIR BUSINESS PRACTICE AND UNFAIR COMPETITION .

In New York, the tort of unfair business practices is expansive and
stresses fairness, not competition . It is generally applied to any form of
unlawful business injury . Tarascio v DeCapite, 2009 N.Y. Misc. Lexis 3960
(Nassau Co. 2009). Even though unfair competition cases may focus on
infringement or misappropriation issues, the mandate in New York is that the
cause of action be broad and flexible to address unfair business tactics. While
there is no current misappropriation on the part of HMH, the expressed
mandate to address unfair business practices is not limited to such a case. The
reclassification to reseller, the requirement to purchase through MBS, and the
tying of e books to the scheme are all elements of the unfair business practices
alleged.

## E. PRIMA FACIE TORT

The sixth cause of action is for prima facie tort. Prima facie tort is the
intentional infliction of harm, which results in special damages, without any
excuse or justification, by an act or series of acts which would otherwise be

8

lawful. Freihofer v. Hearst Corp., *65 N.Y.2d 135, 490 N.Y.S.2d 735,(1985)*.

There the court dismissed the claim because it failed to plead special damages.

The movants quote from Freihofer on page 19 of its brief is incomplete. The

full quote is "*Where relief may be afforded under traditional tort*

*concepts,*(omitted by movant ) prima facie tort may not be invoked as a basis

to sustain a pleading which otherwise fails to state a cause of action in

conventional tort. " Just the opposite. Where complete relief can be obtained

under classic tort concepts, "prima facie tort cannot be pleaded side by side

with the pleading of a conventional tort." Springer v Viking Press, 90 A.D.2d

315 (1st Dept 1982).

The complaint alleges the facts supporting the  claim. If all other claims

are dismissed, then a claim for prima facie tort can survive. Malice can be

inferred by the decision to reclassify Adams, tying a cut  off of E  books sales

to the refusal to sign the contracts and the disproportionate inclusion of

$40,000 of free materials to snatch a $12,000 transaction from Adams.

Moreover, discovery will be targeted to examine malice and whether the

defendant's predictable defensive refrain of pecuniary interest as a motive  is

substantively a subterfuge as to Adams.

# F. THE DONNELY ACT AND NEW YORK'S POLICY FOR FAIR
## COMPETITION

The New York Court of Appeals has held that anti trust laws "represents a public policy of the first magnitude." The Donnelly Act (GBL 340 et seq.) declares every agreement, conspiracy or arrangement whereby monopoly *is or may be established or* any agreement, arrangement or conspiracy which in any way "enervates free competition ' to be void as against public policy. In the Matter of Aimcee Wholesale Corporation and Tomar Products, Inc. 21 N.Y.2d 621 (1968).

Although it is patterned on the Sherman Anti Trust Act, New York has determined that the scope of the Donnelly Act is more expansive than the federal scheme and is not necessarily subject to the same interpretations. New York v Mobil Oil Corp., 38 N.Y.2d 460 (1975).

In addition to the Donnelly Act, New York has also developed a related common law against unfair business practices and unfair competition to protect businesses and markets which is evolving as a broad and flexible doctrine. Electrolux Corp. V Val-Worth, Inc., 6 N.Y.2d 556 (1959) ; Tarascio v DeCapite, 2009 N.Y. Misc. Lexis 3960 (Nassau Co. 2009) .

The prima facie case under the Donnelly Act consists of alleging 1. An arrangement or reciprocal relationship between two or more related entities, 2. Identify the relevant market effected 3. Describe the nature and effect of the arrangement 4. Allege how the economic impact of the arrangement is to

10

restrain trade in the market in question. Benjamin of Forest Hills Realty, Inc. V Austin Sheppard Realty, Inc. , 34 A.D.3d 91 (2d Dept. 2006) ; Capitaland United Soccer Club, Inc. V Capital Distrxit Sports & Entertainment, 238 A.D.2d 777, (3rd Dept. 1997). The complaint contains the requisite allegations and identifies HMH as a leading publisher with large market share and growing.

The Act applies where monopoly is or may be established. This is alleged. Additionally, Exhibit 4 to the Order To Show Cause announces the partnership with MBS and advises that HMH is among the world's largest providers of K-12 education "solutions" that are utilized by 50 million students. Its fourth quarter 2013 circular is also an exhibit . It states that it is the leading provider of k-12 education content by market share and it is growing.

## G.  **THE TYING OF EBOOKS**

The complaint alleges a June 20, 2014 e mail from HMH to Adams advising that it would no longer provide e books unless Adams signed the contracts as a reseller with HMH and MBS. E book sales were subject to a written contract and are a different product than the text materials. The elements of a tying arrangement are I. two products ( tied and tying) , ii. economic coercion , iii. market paper in the tying product market , iv. anti

11

competitive impact in the tied market and v. involvement of a not insubstantial amount of commerce. Pyramid Company of Rockland v Mauther, 153 Misc.2d 458, ( SCNY Rockland Co. 1992); here, beginning on June 20, Adams was cut off from E books as well as print books. That is a tying arrangement and a prima facie violation of the Donnelly Act. The movant argues that there was no cut off of E books. But, there clearly was a cut off before HMH tried to reverse course and process some orders. Although a breach of that contact was not pleaded, the June 20 e mail is evidentiary in establishing the tying arrangement and malice.

## H. INJUNCTIVE RELIEF

Injunctive relief is requested as a remedy. Adams is unable to fulfill its customer orders for HMH product and had to cancel them. This law suit clearly alleges and shows an injury to competition in addition to injury to Adams which threatens its existence after 70 years and creates an irreversible loss of good will in the industry. Tom Doherty Associates, Inc. V Saban Entertainment, Inc., 60 F.3d 27 (2nd Cir. 1995). Accordingly, the remedy of injunctive relief would be available for any of the causes of action pleaded.

## I. CONCLUSION

Wherefore, it is requested that the motion be denied , that leave to amend be granted as to any causes of action deemed to be deficient and

12

such different and further relief as is just, equitable and proper.

September 18, 2014
New York, New York

Laurence Stuart Warshaw, Esq.
Attorney for Plaintiff
1601 Third Avenue, 26D
New York, New York 10128
(212)365-4895

13